IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RICO PAUL, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No.: 4:18-cv-02057-SRC |
| | ) | |
| TRAVIS PACHECO, individually[1], | ) | |
| | ) | |
| and | ) | |
| | ) | |
| TROY L. STEELE, individually[2], | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PEGGY SOMERVILLE, individually[3]. | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

COMES NOW Plaintiff Rico Paul ("Plaintiff" or "Paul"), by and through his undersigned counsel, and for his First Amended Complaint against Defendants, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.  At all times relevant herein, Plaintiff Rico Paul ("Plaintiff" or "Paul") was, and continues to be, a citizen of the United States.

2.  At all times relevant herein, Plaintiff was an inmate in the care, custody, and control of the Missouri Department of Corrections.

---

[1] Claims directed against Defendant Pacheco in his official capacity were dismissed by the Court on February 13, 2019 (DCD_6, 7).

[2] Claims directed against Defendant Steele, in his official capacity and individually capacity, were dismissed by the Court, *without prejudice*, based upon certain pleading deficiencies. (DCD_6, 7). The new claims asserted against Steele in the First-Amended Complaint attempt to correct those deficiencies, and are within the statute of limitations.

[3] Counsel for the Defendants has agreed to accept service of any newly named defendants in this case.

1

3. At all times relevant herein, Plaintiff was an inmate at the Eastern Reception, Diagnostic and Correctional Center, where the alleged injury occurred.

4. The Eastern Reception, Diagnostic and Correctional Center is located in Bonne Terre, Missouri, within the jurisdictional boundaries of this Court.

5. At all times relevant herein, Defendant Troy L. Steele ("Steele") was the warden in charge of the Eastern Reception, Diagnostic and Correctional Center, and was responsible for the training and supervisions of that institution's staff. He is sued in his individual capacity.

6. At all times relevant herein, Defendant Steele acted under the color of the laws, statutes, ordinances regulations, policies, customs, practices, and usages of the United States, the State of Missouri, and the Missouri Department of Corrections and pursuant to his authority as the warden.

7. At all times relevant herein, Defendant Peggy Sommerville ("Sommerville") was employed by the Missouri Department of Corrections in its Eastern Reception, Diagnostic, and Correctional Center, facility, and was in charge of supervising and training Defendant Travis Pacheco. She is sued in her individual capacity.

8. At all times relevant herein, Defendant Sommerville acted under the color of the laws, statutes, ordinances regulations, policies, customs, practices, and usages of the United States, the State of Missouri, and the Missouri Department of Corrections and pursuant to her authority as a law enforcement officer.

9. At all times relevant herein, Defendant Travis Pacheco was employed by the Missouri Department of Corrections in its Eastern Reception, Diagnostic and Correctional Center facility, which was responsible for training and supervising him.

10. At all times relevant herein, Defendant Pacheco acted under the color of the laws, statutes, ordinances regulations, policies, customs, practices, and usages of the United States, the State of Missouri, and the Missouri Department of Corrections and pursuant to his authority as a law enforcement officer. He is sued in his individual capacity.

11. This action arises under the United States Constitution and 42 U.S.C. § 1983.

12. This Court has jurisdiction under and by virtue of 28 U.S.C. §§ 1331 and 1367.

13. Venue is founded in this judicial court upon 28 U.S.C. § 1391, as the acts complained of arose in this district and, upon information and belief, at the time this action was initially filed the parties resided in this judicial district.

14. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO ALL COUNTS

15. At all times relevant herein, Plaintiff was in the custody of the Missouri Department of Corrections as an inmate in the Eastern Reception, Diagnostic and Correction Center ("ERDCC") in Bonne Terre, Missouri.

16. On January 8, 2018, Plaintiff was placed on suicide watch in a "stripped-down" cell after a self-harm incident.

17. The "stripped-down" cell included a set of bars on the inside of the cell, which could be used by inmates as a tie-off point for them to attempt suicide.

18. While on suicide watch, Plaintiff was able to obtain a bedsheet from another inmate who was in the hallway near the suicide cells.

19. Plaintiff's cell had a gap beneath the door that allowed the other inmate to slide the bedsheet into his suicide cell.

20. Plaintiff fastened a noose out of the bedsheet and attached the noose to a bar above the door in the cell.

21. Plaintiff hung himself from the noose in his cell in an attempt to commit suicide.

22. While the Plaintiff was hanging from the noose, Defendant Pacheco nominally performed a "cell check" of the Plaintiff's cell and signed a surveillance log indicating that Plaintiff was unharmed.

23. At this point Defendant Pacheco knew that Plaintiff was hanging in the cell.

24. During this inspection of the suicide cell, Defendant Pacheco took no action to respond to Plaintiff's active suicide attempt.

25. Defendant Pacheco ignored other inmates calling to get Plaintiff help and Plaintiff did not receive assistance until another corrections officer responded to the incident.

26. On information and belief, Defendant Sommerville was the supervisor of Defendant Pacheco.

27. Defendant Sommerville failed to evaluate and correct Defendant Pacheco's actions, on inactions, in performing inspections in the suicide cell hallway.

28. Upon information and belief, Sommerville knew that inmates were in the habit of passing objects to prisoners in cells while in the hallway, even to those prisoners in confinement and/or on suicide watch, and Sommerville allowed the practice of passing objects and failed to discipline or otherwise prohibit prison guards under her supervision and control from allowing prisoners to pass objects to other prisoners, including those on suicide watch.

29. Further, Sommerville knew that there was a gap in the cell of those used to house prisoners on suicide watch, like Plaintiff, and took no action to correct the condition in the jail

4

that created the unsafe condition of allowing objects to be passed from prisoners in the hallway to even those on suicide watch, like Plaintiff.

30. Further, Sommerville knew that a set of bars were accessible in the cell that housed Plaintiff that allowed him to take an object, such as a bedsheet, and use it to hang himself.  Knowing that this condition exists, Sommerville took not action to correct this situation.

31. Upon information and belief, Steele knew that inmates were in the habit of passing objects to prisoners in cells while in the hallway, even to those prisoners in confinement and/or on suicide watch, and Sommerville allowed the practice of passing objects and failed to discipline or otherwise prohibit prison guards under her supervision and control from allowing prisoners to pass objects to other prisoners, including those on suicide watch.

32. Further, Steele knew that there was a gap in the cell of those used to house prisoners on suicide watch, like Plaintiff, and took no action to correct the condition in the jail that created the unsafe condition of allowing objects to be passed from prisoners in the hallway to even those on suicide watch, like Plaintiff.

33. Further, Steele knew that a set of bars were accessible in the cell that housed Plaintiff that allowed him to take an object, such as a bedsheet, and use it to hang himself. Knowing that this condition exists, Sommerville took not action to correct this situation.

34. As a direct and proximate result of the actions of the Defendants, Plaintiff sustained injuries including, but not limited to, requiring emergency medical treatment, chronic neck and shoulder pain, and suffering great physical, mental, and emotion pain.

5

35. On information and belief, the entire incident was captured on a prison surveillance camera, but despite a preservation request by the Plaintiff, the footage was not maintained.

36. The aforementioned acts (or inaction) of Defendants, individually and collectively, were deliberate, willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for Plaintiff's rights, were motivated by evil intent, and justify awarding exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

37. By reason of the above-described acts and omissions of Defendants, individually and collectively, Plaintiff requests payment by Defendants, each of them, for a reasonable sum of attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act, or any other applicable provision set by law.

38. Plaintiff originally filed a grievance and administrative process regarding this injury with the facility. On information and belief, the Plaintiff exhausted all administrative remedies and processes available to him to address this grievance.

39. On information and belief, the Plaintiff is not barred from bringing this action in forma pauperis under 28 U.S.C. §1915(g).

## COUNT I
## CRUEL AND UNUSUAL PUNISHMENT
## DELIBERATE INDIFFERENCE & FAILURE TO PROTECT COGNIZABLE UNDER SECTION 1983
## (AGAINST ALL DEFENDANTS)

40. Plaintiff hereby incorporates by reference each and every allegation and averment set forth in paragraphs one (1) through thirty-nine (39) of this First-Amended Complaint as if fully set forth herein.

6

41. While in the custody of Defendants, Plaintiff was allowed to commit self-harm.

42. Defendants knew that Plaintiff had a known mental condition and failed to adequately supervise him and others as a known suicide risk.

43. Defendants knew that the suicide watch cell design included bars that could be used as tie-off points on the inside of the cell for an inmate to attempt suicide.

44. Defendants generally failed to adequately supervise and/or care for Plaintiff when he had a known risk of self-harm.

45. Defendants deliberately ignored the Plaintiff and failed to render aid in a timely manner.

46. As a direct and proximate result of the Defendants actions and inactions, Plaintiff was caused to suffer serious bodily injuries, including but not limited to bruising, wounds, physical pain and suffering, and emotional pain and suffering.

47. As a direct and proximate cause of the Defendants' actions as alleged herein, Plaintiff has suffered and will continue to suffer physical pain and suffering, and emotion pain and suffering.

48. Defendants' actions were taken under color of state law.

49. Through their actions and omissions, Defendants knowingly and deliberate indifference to Plaintiff's rights, subjected Plaintiff to a violation of cruel and unusual punishment by failing to protect the Defendant from himself while suffering from a known mental condition. These actions and omissions caused substantial harm to Plaintiff.

50. There exists with the Missouri Department of Corrections policies or customs, practices and usages of deliberate indifference that are so pervasive that they constitute the policies of the Defendant that caused the constitutional deprivations of Plaintiff set forth herein.

51. By reason of the conduct of Defendants, Plaintiff was deprived of rights secured to him by the Eighth Amendment to the Constitution of the United States and the law enacted thereunder. Defendants' conduct was deliberately indifferent to Plaintiff's serious medical needs. Therefore, Defendant are liable to Plaintiff pursuant to 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff prays for judgment against each and every named Defendant, for compensatory damages in an amount that is fair and reasonable for his physical injuries and emotional pain and suffering; for punitive damages; plus the cost of the suit of this action and reasonable attorneys' fees; and for such other and furth relief as the Court deems fair and appropriate under the circumstances.

## COUNT II
## CRUEL AND UNUSUAL PUNISHMENT
## DELIBERATE INDIFFERENCE
## CREATING AND MAINTAINING A DANGEROUS CONDITION COGNIZABLE
## UNDER SECTION 1983
## (AGAINST ALL DEFENDANTS)

52. Plaintiff hereby incorporates by reference each and every allegation and averment set forth in paragraphs one (1) through fifty-one (51) of this First-Amended Complaint as if fully set forth herein.

53. While in the custody of Defendants, Plaintiff committed self-harm when Defendants failed to provide Plaintiff with a safe environment, (to wit: the cell specifically provided for suicide prevention was inherently unsafe), thus causing Plaintiff to suffer serious bodily injuries, bruising, wounds, physical pain and suffering, and emotional pain and suffering.

54. The dangerous conditions referenced herein include, but are not limited to:

a. The suicide watch cell design included bars that could be used as tie-off points on the inside of the cell for an inmate to attempt suicide;

    b.    Allowing a gap beneath the cell door large enough for inmates to pass dangerous items into the suicide watch cell; and

    c.    Permitting other inmates to have access to the suicide watch cell hallway.

55.    As a direct and proximate cause of the Defendants' actions as alleged herein, Plaintiff has suffered and will continue to suffer physical pain and suffering, and emotion pain and suffering.

56.    Defendants were aware inmates had access to the suicide watch cell hallway.

57.    Defendants were aware that inmates passed dangerous items through the gaps beneath the cell doors.

58.    Defendant Pacheco knew but failed to take action to prevent inmates from passing dangerous items through the gaps beneath the cell door.

59.    Defendant Sommerville knew but failed to take action to prevent inmates from passing dangerous items through the gaps beneath the cell door.

60.    Defendant Sommerville failed to instruct Defendant Pacheco to take action to prevent inmates from passing dangerous items through the gaps beneath the cell door or otherwise discipline Pacheo, and other guards like him, and inmates for taking such actions in order to prevent such conduct.

61.    Defendant Steele knew but failed to take action to prevent inmates from passing dangerous items through the gaps beneath the cell door.

62.    Defendant Steele failed to instruct Pacheco, and other guards like him, to take action to prevent inmates from passing dangerous items through the gaps beneath the cell door, or otherwise discipline Pacheco, and other guards like him, and inmates for taking such actions in order to prevent such conduct.

9

63. Defendants' actions were taken under color of state law.

64. Defendants knowingly and deliberate indifference to Plaintiff's rights, subjected Plaintiff to dangerous conditions in violation of the Constitutional prohibition against cruel and unusual punishment. These actions and omissions caused substantial harm to Plaintiff.

65. There exists with the Missouri Department of Corrections policies or customs, practices and usages of maintaining dangerous premises and conditions such as this that are so pervasive that they constitute the policies of the Defendant that caused the constitutional deprivations of Plaintiff set forth herein.

66. By reason of the conduct of Defendants, Plaintiff was deprived of rights secured to him by the Eighth Amendment to the Constitution of the United States and the law enacted thereunder. Defendants' conduct was deliberately indifferent to Plaintiff's serious medical need for a safe environment. Therefore, Defendants are liable to Plaintiff pursuant to 42 U.S.C. Section 1983.

WHEREFORE, Plaintiff prays for judgment against each and every named Defendant, for compensatory damages in an amount that is fair and reasonable for his physical injuries and emotional pain and suffering; for punitive; plus the cost of the suit of this action and reasonable attorneys' fees; and for such other and furth relief as the Court deems fair and appropriate under the circumstances.

**COUNT III**
**FAILURE TO INSTRUCT, TRAIN, SUPERVISE, AND/OR CONTROL**
**COGNIZABLE UNDER 42 U.S.C. § 1983**
**(AGAINST DEFENDANTS STEELE AND SOMMERVILLE)**

67. Plaintiff hereby incorporates by reference each and every allegation and averment set forth in paragraphs one (1) through sixty-six (66) of this Amended Complaint as if fully set forth herein.

68. Defendant Steele violated the constitutional rights of Plaintiff by subjecting Plaintiff to cruel and unusual punishment as set forth in Count I and Count II.

69. Defendant Steele and Sommerville conduct, as listed below, caused Plaintiff's constitutional deprivations and damages by

   a. Failing to adequately train, supervise, discipline and/or control corrections officers patrolling the suicide watch hallway, concerning the practices aforementioned to assure compliance with state and federal laws, and the Constitution of the United States, including but not limited to failing to train corrections officers on the proper procedures to employ when inmates (a) have mental health issues; (b) vocalize self-harm; and/or (c) are placed in suicide cells / under suicide watch.

70. Alternatively, and without waiver of the foregoing, Defendants' training program, which Steele and Sommerville were responsible for in whole or in part, was not adequate to train its officers to properly protect suicidal inmates, like the situation involving Plaintiff.

71. Defendants Steele and Sommerville knew that more and/or different training was needed to avoid the acts and/or omissions of Defendant Pacheco as described herein, or the need for such training was obvious to the Defendants.

72. Defendants Steele and Sommerville were vested with the duty, power, and authority to train, supervise, and otherwise control the corrections officers at the Eastern

11

Reception, Diagnostic and Corrections Center. Defendants failed in their duty to so train and supervise the corrections officers responsible for Plaintiff's injuries as described herein in general and specifically so as to conform their conduct with constitutional requirements.

73. Defendant Steele was responsible for the training of Sommerville and Pacheco.

74. Defendant Sommerville was responsible for the training of Pacheco.

75. The failure of Defendants Steele and Sommerville as alleged herein caused the constitutional deprivation that was suffered by the Plaintiff as set forth in Count I and Count II.

76. The acts of the Defendants as set forth herein were taken under color of state law.

77. As a direct and proximate result of the actions of the Defendants as alleged herein, Plaintiff was caused to sustain injuries and damages which include, but were not necessarily limited to, bodily injuries, bruising, wounds, physical pain and suffering and emotion pain and suffering.

78. The acts of Defendants Steele and Sommerville as set forth herein involved a reckless or callous indifference to the federally protected rights of Plaintiff, making an award of punitive damages appropriate in this case to deter it and others from similar conduct in the future.

WHEREFORE, Plaintiff prays for judgment against Defendants Steele and Sommerville, for compensatory damages in an amount that is fair and reasonable for his physical injuries and emotional pain and suffering; for punitive damages; plus, the cost of the suit of this action and reasonable attorneys' fees; and for such other and furth relief as the Court deems fair and appropriate under the circumstances.

                Respectfully submitted,

                NEWTON BARTH, L.L.P

By:                _____

                Talmage E. Newton IV, MO56647
                talmage@newtonbarth.com
                555 Washington Ave., Ste. 420
                St. Louis, Missouri 63101
                (314) 272-4490 – Office

                *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was electronically served on all parties of record via the court's e-filing System on this 25th day of August 2021.

_____